UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICROSOFT CORPORATION, a Washington Corporation, <br><br> Plaintiff, <br><br> v. <br><br> COMMUNICATIONS & DATA SYSTEM CONSULTANTS, INC., dba COMPUTER BAY, an Indiana corporation, <br><br> Defendant. | CASE NO. C15-0497 RSM <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and/or 12(b)(3) for improper venue. Dkt. #24. Defendant argues that this Court lacks personal jurisdiction over it because it is a non-resident corporation that lacks sufficient minimum contacts with the State of Washington, and that venue is improper when Defendant has had no contacts with this District. *Id.* Defendant further argues that the Complaint should be dismissed under Rule 12(b)(6) on an estoppel theory.[1]  *Id.*  Plaintiff responds that it has met the minimum threshold for demonstrating specific jurisdiction in this Court. Dkt. #29. Plaintiff also responds that a

---

[1] Defendant also seeks monetary sanctions on the basis that Plaintiff has sued the wrong entity. Dkt. #31. Because the request for sanctions was not raised until Defendant filed its Reply brief, Plaintiff has not had the opportunity to address that issue.

ORDER
PAGE - 1

motion to dismiss based on the affirmative defense of estoppel is improper at this time. *Id.* For the reasons set forth below, this Court now GRANTS Defendant's motion to dismiss.

## II.     BACKGROUND

Plaintiff develops, distributes, and licenses various types of computer software, including operating system software (such as Microsoft Windows) and productivity software (such as Microsoft Office). Dkt. #16 at ¶¶ 14–18. Microsoft holds registered copyrights in the various different versions of these products, and has registered trademarks and service marks associated with the products. *Id*. ¶¶ 14-19.

Microsoft has implemented a wide-range of initiatives to protect its customers and combat theft of its intellectual property, including its product activation system, which involves the activation of software through product keys. *Id.* ¶ 25. A Microsoft product key is a 25-character alphanumeric string generated by Microsoft and provided either directly to Microsoft's customers or to Microsoft's original equipment manufacturer ("OEM") partners. *Id.* ¶¶ 26-29. Generally, when customers or OEMs install Microsoft software on a device, they must enter the product key. *Id.* Then, as part of the activation process, customers and/or OEMs voluntarily contact Microsoft's activation servers over the Internet and transmit the product keys and other technical information about their device to the servers. *Id.* Because Microsoft software is capable of being installed on an unlimited number of devices, Microsoft uses the product activation process to detect piracy and protect consumers from the risk of non-genuine software. *Id*. Microsoft alleges that for some time, Defendant's IP address has been used to activate numerous Microsoft product keys. *Id.* at ¶¶ 34-38.

Defendant, Computer Bay, is a resident of Indiana. Dkt. #15 at ¶¶ 2-3. Plaintiff alleges that Computer Bay builds, customizes, repairs, and sells brand-name personal computers,

ORDER
PAGE - 2

printers, video surveillance systems, and computer parts and accessories.  Dkt. #16 at ¶ 6. According to Defendant, since well before 2012, Computer Bay's store and affiliated websites were not and are not now related in any way to any other physical store, website, or entity located elsewhere in the United States and Canada.  Dkt. #34 at ¶ 6.  Computer Bay's store is located at 111 East Joliet Street in Schererville, Indiana, and is its only physical place of business.  *Id.* at ¶ 3.

Computer Bay's advertising, sales, and services are directed towards a small area around the store's physical location and portions of nearby states.  Dkt. #15 at ¶ ¶ 13 and 15. Computer Bay does not sell products or services to Washington consumers.  *Id*. at ¶ 10. Computer Bay has a total of eight employees.  *Id*. at ¶ 19.  Joy Sporleder is the President and Secretary of Communications, Eric Cox is the Vice President in charge of sales and purchasing, and Computer Bay's other employees include four service technicians, one salesperson, and a seasonal clerical worker.  *Id*. at ¶ ¶ 2 and 19.  These eight people all reside in Indiana and travel only within a relatively small and localized area around the storefront on behalf of the business. *Id*. at ¶ 19.

Computer Bay has never had any offices, bank accounts, post office boxes, employees working in or visiting Washington for business-related purposes, or owned or controlled any property in Washington.  *Id*. at ¶ ¶ 5–7.  Computer Bay has no agent for service of process anywhere in Washington.  *Id*. at ¶ 9.  Computer Bay's services and products have never been sold or shipped to Washington, nor is Computer Bay licensed or registered to conduct business in Washington.  *Id*. at ¶ ¶ 10–11.

Computer Bay has never advertised or solicited business in Washington. *Id*. at ¶ 12.  Its own website is passive.  It merely displays basic contact information, presents information

ORDER
PAGE - 3

about the products Computer Bay offers for sale, and provides information about computer-related services and special offers. *Id*. at ¶ 14. Potential consumers viewing the Computer Bay website cannot make online inquiries about products, conduct an online chat session with a service representative, actively request on-site product service or upgrades, set up an account, or use an online "shopping cart" or other means to procure products or services. *Id*. Computer Bay offers remote diagnostic services only for established customers, none of whom are in Washington. *Id.* Therefore, Washington consumers cannot buy or obtain Computer Bay's products or services through its website. All efforts on the website are directed towards providing customers with pre-written product information so that they can eventually call the listed phone number or visit the store in person to transact business.

Similarly, Computer Bay's web sites on Yelp, Yahoo, Twitter and Facebook are entirely passive. Dkt. #25 at ¶ ¶ 3 and 5–8 and Exs. 1–4. They do not support live inquiries about products, allow online chat sessions with a service representative, permit active requests for on-site product service or upgrades, have a method for setting up customer accounts, offer an online "shopping cart" or provide any real-time means to order products. *Id*. Rather, these social media sites primarily assist local customers by providing them with information about the store's physical address, directions on how to get to the physical storefront, contact phone numbers, and store hours. *Id*. These social media web sites are not directed to customers in Washington State. *Id*. ¶ 4.

Computer Bay vehemently disavows any intent to install unlicensed or pirated software, any knowledge of the installation of unlicensed or pirated software for its customers, or having acted with any willful blindness to or in reckless disregard of Microsoft's rights. Sales and Service Technician Matt Rusch explains Computer Bay's typical processes as follows: When

ORDER
PAGE - 4

the technicians diagnose, service and repair computers for Computer Bay customers, they examine the components of the computers that customers bring in for service, and repair or replace the computer's components as needed until the computer functions again. Dkt. #32 at ¶ 3. On some occasions, service or repair of the identified problems requires Computer Bay to wipe the computer's hard drive of all software and reinstall the software again after component replacement or repairs have been made. *Id.*

Before Computer Bay re-installed the customer's copy of a Microsoft product on a wiped computer hard drive, the technician insisted that their customers provide an indicator the product was a licensed and genuine Microsoft product. *Id.* at ¶ 4. These indicators included a Microsoft OEM disk and a Microsoft Certificate of Authenticity ("COA") sticker on the computer indicating that a legitimate copy of the Microsoft product had been previously installed. *Id.* According to Mr. Rusch, Computer Bay only uses the customer's provided media to re-install the original Microsoft software if these indicators of licensure or authenticity are first provided. *Id.* If the customer does not or will not provide such indicators of licensure or authenticity for a previously installed Microsoft product, Computer Bay offers to sell the customer a new version of the software as a replacement. If the customer agrees to purchase the new version, the technician installs it. *Id.* at ¶ 5. If the customer does not agree to purchase a new version, Computer Bay returns the unrepaired computer to the customer. *Id.*

Computer Bay's System Builders assemble new computers for retail sale. Dkt. #33 at ¶ 3. Computer Bay installs and activates an operating system on each of these computers to make them fully operational and functional. Dkt. #33 at ¶ 3. Computer Bay either activates or assists the end user with each activation of the installed operating systems before the computers are offered for sale to the public. *Id.* Mr. Chidichimo, one of Computer Bay's System

ORDER
PAGE - 5

Builders, has never observed any newly built computer with installed but unactivated Microsoft products sold or provided to any members of the public without a COA being provided since 2003 when he started working at Computer Bay as a System Builder. *Id.*

Since 2012, the primary operating system software products re-installed or newly installed on computers serviced at Computer Bay is Microsoft Windows 7 and Windows 8. Dkts. #32 at ¶ 6 and #33 at ¶ 4. Computer Bay also re-installed or installed other Microsoft products on computers serviced at Computer Bay, including various versions of Microsoft Office. Dkt. #32 at ¶ 6. Computer Bay ordered and obtained all of its Microsoft software products from Microsoft-approved vendors whenever a customer requested a new or replacement Microsoft product be installed on a computer brought in for servicing or repair. *Id.* and Dkt. #33 at ¶ 4. Each vendor of a Microsoft product provided Computer Bay with a fully licensed version of the product, as evidenced by an accompanying COA and an Activation Key. Dkts. #32 at ¶ 7 and #33 at ¶ 5.

### III. DISCUSSION

**A. Standard of Review for Motions Under 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) governs the dismissal of an action based on lack of personal jurisdiction. Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of his Complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff

ORDER
PAGE - 6

need only make a *prima facie* showing of jurisdictional facts. *Schwarzenegger,* at 800. Uncontroverted factual allegations must be taken as true. Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.* A *prima facie* showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

Where no applicable federal statute addresses the issue, a court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.* 95 Wn.App. 462, 465, 975 P.2d 555 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger,* at 800-01.

The Due Process Clause protects a defendant's liberty interest in not being subject to the binding judgments of a forum with which it has established no meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977).

Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir.2002). General jurisdiction exists over a non-resident defendant

ORDER
PAGE - 7

when there is "continuous and systematic general business contacts that approximate physical presence in the forum state." *Schwarzenegger,* at 801.  In the absence of general jurisdiction, the court may still exercise specific jurisdiction over a non-resident defendant.  To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related activities; and (3) the exercise of jurisdiction would be reasonable.  *Easter v. American West Financial,* 381 F.3d 948, 960-61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

   *1. General Jurisdiction*

   A defendant is subject to general jurisdiction only where the defendant's contacts with a forum are "substantial" or "continuous and systematic."  *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).  As the Ninth Circuit has recently noted, "[g]eneral jurisdiction over a corporation is appropriate only when the corporation's contacts with the forum state 'are so constant and pervasive as to render it essentially at home' in the state."  *Martinez v. Aero Caribbean*, 2014 U.S. App. LEXIS 16163, *8 (9th Cir. Aug. 21, 2014)(citation omitted).  Plaintiff does not dispute that general jurisdiction is lacking in this matter.  Accordingly, the Court turns to whether it has specific jurisdiction.

   *2. Specific Jurisdiction*

   As noted above, in the Ninth Circuit, specific jurisdiction is analyzed using a three-part test: First, the nonresident defendant must have purposefully directed his activities or consummated some transaction with the forum or a forum resident, or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum,

ORDER
PAGE - 8

thereby invoking the benefits and protections of its laws; second, the claim must be one which arises out of or relates to the nonresident defendant's forum-related activities; and third, the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable. If the plaintiff is successful at establishing the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.

The first prong of the test is analyzed under either a "purposeful availment" standard or a "purposeful direction" standard, which are two distinct concepts. *Washington Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 672 (9th Cir. 2012). Generally for claims sounding in contract, courts apply a "purposeful availment" analysis, asking whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. For claims sounding in tort, courts generally apply a "purposeful direction" test, looking to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere. *Schwarzenegger*, 374 F.3d at 802-03.

To establish purposeful direction, the plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). In cases involving allegations such as trademark infringement and misappropriation the Ninth Circuit focuses on "purposeful direction," applying the "*Calder* effects" test. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) ("Because [plaintiff] has alleged copyright infringement, a tort-like cause of action, purposeful direction

ORDER
PAGE - 9

'is the proper analytical framework.'"); *Facebook, Inc. v. Pedersen*, 868 F. Supp.2d 953, 958 (N.D. Cal. 2012) ("The Court finds that the *Calder* effects test is the proper framework for analyzing the exercise of specific personal jurisdiction over defendants, because [the plaintiff] alleges trademark dilution and infringement, both of which are tort-like causes of action.").

Defendant concedes that its acts of manually keying in 25-character alphanumeric product keys to complete the activation process satisfies the first prong of the test – commitment of an intentional act. Dkt. #31 at 6. However, Defendant argues that Plaintiff has failed to establish the second *Calder* element – expressly aimed at the forum state – and has therefore failed to satisfy the purposeful-direction prong of the Ninth Circuit's test for specific personal jurisdiction.

Plaintiff argues that Defendants have purposefully aimed their activities at this forum because they knew Microsoft was a resident of Washington, and because they both willfully infringed Microsoft's trademarks and copyrights and they made an affirmative statement to Microsoft that the software was genuine and licensed which induced Microsoft to activate the unlicensed software. Dkt. #29 at 10. Plaintiff relies exclusively on this Court's recent decision in another of Plaintiff's infringement cases, involving identical allegations against a different out-of-District Defendant. *See* Dkt. #29 at 10-11 (referencing *Microsoft v. Mountain West Computers*, Case No. C14-1772RSM, Dkt. #37 (July 22, 2015)). However, Plaintiff's reliance on that decision is misplaced in the instant case.

In *Mountain West*, this Court informed Plaintiff that the United States Supreme Court has expressly rejected the idea that a defendant's knowledge of a plaintiff's forum connections and the foreseeability of harm there are enough in themselves to satisfy the minimum contacts analysis. *Microsoft v. Mountain West Computers*, Case No. C14-1772RSM, Dkt. #37 (July 22,

ORDER
PAGE - 10

2015) (citing *Walden v. Fiore*, 134 S. Ct. 1115, 1124-25, 188 L. Ed. 2d 12 (2014)). This Court then determined that, while *Walden* acknowledges it does not address intentional torts committed "via the Internet or other electronic means," like the copyright claim at issue here, *Walden*, 134 S. Ct. at 1125 n.9, the fact that the Supreme Court held that it would be a violation of the defendant's due process rights to be forced to submit to personal jurisdiction based merely on his or her knowledge of the plaintiff's location suggests that the high court's holding cannot be cabined to torts committed in the non-virtual world. *See Under A Foot Plant*, 2015 U.S. Dist. LEXIS 37596, 2015 WL 1401697, at *4 & n.1 (applying *Walden* to hold that defendants publishing of copyrighted images on their website did not subject them to personal jurisdiction). This Court further noted that in the only precedential Ninth Circuit decision available at the time that applied *Walden*, the court held that personal jurisdiction in California could not be based on statements a non-California resident made to another non-California resident, even where those statements allegedly interfered with a sales contract held by the California-based plaintiffs. *See Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). The court emphasized that the defendant's alleged tortious interference was committed "without entering California, contacting any person in California, or otherwise reaching out to California," and that the alleged injury – an inability to access out-of-state funds – was "not tethered to California in any meaningful way" and "would follow him wherever he might choose to live or travel." *Id.*

The same logic follows in the instant case. Importantly, unlike the Defendants in *Mountain West*, the instant Defendant has not ordered products directly from any vendor located in the forum state. Further, Plaintiff has produced no evidence that the servers accessed by the instant Defendant are located in Washington. *See* Dkt. #30. Without more, and after

ORDER
PAGE - 11

*Walden*, the Court cannot find that Defendant's alleged actions are tethered in any meaningful way to Washington.

### B. Venue and Estoppel

Given that the Court has granted Defendant's motion to dismiss for lack of jurisdiction, it will not address Defendant's venue or estoppels arguments.

### C. Sanctions

In its Reply, Defendant asks the Court to impose sanctions on the basis that Plaintiff appears to have sued the wrong entity. Dkt. #31 at 12. Specifically, Defendant points to Plaintiff's Response brief, wherein Plaintiff states that it has identified "hundreds of product key activations by Computer Bay from <u>more than a dozen related IP addresses</u>, each of which has characteristics consistent with software piracy." Dkt. #29 at 5 (emphasis added). Computer Bay asserts that it has only five IP addresses and only uses one or two of those addresses for product activations. Dkt. #32 at ¶ 16. On the record currently before it, and given that Plaintiff has been unable to respond to this issue, the Court cannot meaningfully address any request for sanctions and therefore denies Defendant's request.

### IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS that Defendants' Motion to Dismiss (Dkt. #24) is GRANTED for the reasons discussed above. This matter is now CLOSED.

DATED this 28th day of August 2015.

_____
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE